FILED

2005 Aug-04  AM 09:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **EDWARD JENNINGS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-03-BE-3013-E** |
| | ] | |
| **AVONDALE MILLS, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

This case is currently before the court on a motion for summary judgment (doc # 32), supporting brief (doc. # 33), and reply brief (doc. # 60) filed by defendant, Avondale Mills. *Pro se* plaintiff Edward Jennings filed an objection to the motion for summary judgment (doc. # 57), but submitted no evidentiary materials in opposition to the motion. The court has jurisdiction of this case pursuant to its federal question jurisdiction under 28 U.S.C. §1331.

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in its entirety.

Plaintiff began working at Avondale in July 2002 as a stager in Avondale's Sylacauga, Alabama finishing department. Avondale employees are governed by a progressive disciplinary policy for attendance violations. On September 8, 2003, the defendant terminated Jennings for absences that occurred on September 4-6, 2003. Plaintiff

1

subsequently filed suit in this court alleging that the defendant violated the Family and

Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2612(a)(1)(D), when he was terminated

for absences necessitated by what he categorizes as depression and back problems.  Jennings

contends that Avondale's actions were "in willful violation of the FMLA by interfering with

his right to return to work from leave for a serious health condition, and by retaliating against

[him] because he had previously taken leave under an FMLA qualifying event."[1]  The court

construes plaintiff's claim as one for interference with rights protected by the FMLA

pursuant to 29 U.S.C. § 2615(a)(1) because the record contains no evidence that plaintiff had

ever applied for or been granted FMLA leave prior to his termination.  Consequently,

Jennings could not have been fired in retaliation for any prior exercise of FMLA leave.

Construed in the light most favorable to the plaintiff, as the party opposing summary

judgment, the facts are as follows.  Avondale Mills is a textile manufacturer who owns

facilities in Alabama, Georgia, and South Carolina.[2]  During the employment orientation

process, plaintiff received a booklet explaining various policies and procedures.[3]  Specifically

outlined in the booklet was information explaining that regular attendance is a job

prerequisite and other information explaining Avondale's policy regarding FMLA leave of

absence.  To successfully request FMLA leave, the defendant requires employees to provide

the company with advance notice and medical certification.[4]

---

[1]Compl., ¶ 19.

[2]Affidavit of John Parrish ¶ 4.

[3]*See* doc. # 33, p. 2.

[4]*Id.*

2

Avondale also has a progressive disciplinary policy that provides that employees who receive three associate reprimands within a twelve month period are subject to suspension with a request to terminate.[5]  During his employment, plaintiff received several reprimands for performance deficiencies and absenteeism.  On November 14, 2002, Jennings was reprimanded for riding a tugger in the staging area.  Approximately five months later, on April 14, 15, and 16, 2003, the plaintiff was treated at the Coosa County Chiropractic Center for complaints of back pain.[6]  The record contains a doctor's excuse for the April 14, 2003 absence, asking that plaintiff be excused "because the aggravation of his/her condition He/She is unable to work."[7]  The manager's notes from April 14, 2003 indicate that "[s]omeone called said Edward was having back problems."[8]  Plaintiff was reprimanded on April 15, 2003 for tardiness when he returned to work.

Jennings was also reprimanded on April 26, 2003 for tardiness and for giving his supervisor a false reason for his absence.[9]  Although the April 26, 2003, reprimand was his third reprimand within a twelve-month period, making Jennings technically eligible for suspension, Avondale did not terminate him, but instead warned him that another reprimand would result in termination.

Jennings received another reprimand on May 3, 2003 for, once again, reporting late to

---

[5]*Id.*

[6]Pl's Dep., p. 24-25.

[7]Pl's Dep. Ex. 6.

[8]Aff. John Parrish, *Ex.* D.

[9]*Id.*

3

work.  However, for the second time, plaintiff was spared termination.  Plaintiff received a

fifth associate reprimand on July 11, 2003 and on July 12, 2003 for failing to report to work

and not requesting a pre-authorized absence.

Apparently, Jennings was hospitalized at the Northeast Alabama Regional Medical

Center on July 11, 2003 and discharged the following day.  According to the plaintiff, his

fiancee notified human resources manager John Parrish of the hospitalization.  The manager's

notes from July 11, 2003 indicate that the plaintiff was in the hospital.[10]  Nothing in the

record indicates that plaintiff received any further treatment for depression after July 2003.

Based on his July absences, Jennings was ultimately suspended with a request to

terminate for receiving five reprimands within a twelve-month period.  However, Jennings

appealed the decision and was permitted to return to work on August 21, 2003.  On the first

day of his return to work, Jennings worked for approximately one-and-a half hours and then

left, stating that he was sick.  On August 22, 2003, plaintiff worked for approximately a half

hour and again, went home sick.  The next day on August 23, 2003, Jennings only worked for

an hour and a half before requesting to go home sick.  The plaintiff concedes that he never

went to the human resources department to inquire about sick leave or FMLA leave.[11]

Plaintiff next reported to work on August 28, 2003, worked for one and a half hours

before indicating that he was sick and needed to go home.  Jennings received an associate

reprimand for partial absenteeism on August 28, 2003.

---

[10]Aff. of John Parrish, *Ex*. D.

[11]*Id.*

4

On August 29, 2003, Jennings had a conversation with department manager Dan Holland about his partial absenteeism. Plaintiff indicated that illness was the primary cause for his August absences. Holland informed Jennings that he needed to go to the human resources department and inquire about sick leave.[12]

On Jennings' next scheduled shift, which was September 4, 2003 through September 6, 2003, he did not report to work or notify his supervisor of his absence. Plaintiff alleges that he spoke with department manager Dan Holly on September 4, 2003 about his need for medical leave. Based on this conversation, Jennings alleges in his submission in opposition to the motion for summary judgment that he provided Holly with a doctor's excuse for his September 6, 2003 absences. However, the record does not contain a medical excuse for Jennings' September 6, 2003 absence. This evidentiary deficiency can perhaps be explained by the plaintiff's deposition testimony in which he admitted that he never provided the defendant with a doctor's note excusing absences leading to his termination.[13] The defendant issued a separation notice on September 8, 2003 terminating Jennings' employment after plaintiff was absent from work on September 4-6, 2003.

The record also does not indicate that plaintiff sought additional treatment for back problems or depression during his absences that occurred between August 21, 2003 and September 8, 2003, the day that he was terminated.

---

[12]*See* Affidavit of John Parrish, *Ex*. C.

[13]Pl's Dep., p. 36-37.

## II. STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56.  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 251-52.  In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986). Furthermore, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment.  *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in its entirety.

## III. THE FAMILY MEDICAL LEAVE ACT

The FMLA affords an eligible employee up to twelve weeks of leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The term "serious health condition" signifies "an illness, injury, impairment, or physical or mental condition that involves

inpatient care in a hospital, hospice, or residential medical facility; or continuing treatment by a health-care provider.  29 U.S.C. § 2611(11).  The implementing regulations contain a bright-line test for determining what illnesses qualify as serious health conditions.  For example, a physical or mental condition qualifies as a "serious health condition" if the employee received inpatient care or continuing treatment resulting in one or more forms of incapacity.[14]

The two types of claims available to employees under the FMLA are ones for interference and retaliation.  *See Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1206 (11th Cir. 2001).  In an interference claim, the employee must show only that he or she "was entitled to the benefit denied."  *Russell v. North Broward Hosp*., 346 F.3d 1335, 1340 (11th Cir. 2003).  In the absence of Eleventh Circuit authority specifically delineating the elements of an interference claim, the court looks to guidance from another court.  In *Sarali v. Automation & Modular Components, Inc*., 405 F.3d 446, 454 (6th Cir. 2005), the Sixth Circuit described the elements of an FMLA interference claim as requiring proof that (1) the plaintiff is an eligible employee under the FMLA; (2) the defendant is a covered employee under the FMLA; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave appropriate notice to the defendant of his intention to take leave; and (5) the defendant denied the plaintiff benefits to which he or she was entitled.

The court concludes that Jennings has not adduced sufficient evidence to survive a

---

[14]The regulations further define "incapacity" as, i.e., "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i).

motion for summary judgment because of his inability to create a genuine issue of material fact on the issue of notice. To benefit from the FMLA's protections, an employee must provide his employer with enough information to demonstrate that he or she may be entitled to FMLA leave. Although the employee is not specifically required to invoke the statute by name, he or she must provide the employer with enough information to suggest that his health condition could, upon further investigation, be classified as an FMLA-qualifying illness. *See Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) (holding that the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason). *See also, Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir. 1995) (holding that "[w]hat is practicable, both in terms of timing of the notice and its content, will depend upon the facts and circumstances of each individual case.")

As a preliminary matter, the court notes that the plaintiff was not terminated based on absences occurring in April and July of 2003. Instead, on two separate occasions, Jennings was given an opportunity to continue his employment despite his poor attendance record. The above-referenced observation is particularly important because the record indicates that Jennings arguably gave his employer sufficient notice to indicate that his absences in April and July of 2003 *might* be related to a potentially FMLA-qualifying illness.[15]

However, Jennings did not provide Avondale with the same level of specificity regarding the September 2003 absences at issue in this lawsuit. For example, the plaintiff's

---

[15] *See* Infra, p. 3, 4.

vague assertions in late August and September 2003 that he was "sick" were inadequate notice to trigger further inquiry by Avondale because it gave absolutely no information to suggest that he was suffering from the type of serious health condition protected by the FMLA nor alerted the defendant to inquire about whether the September absences were in any way related the illnesses necessitating the absences in April and July of 2003.

Even when confronted with Jennings' vague assertions that he was "sick" in late August and early September 2003, department manager Dan Holland nevertheless encouraged the plaintiff to consult with the human resources department. However, in direct contravention to Holland's guidance, the plaintiff concedes that he never went to the human resources department to inquire about obtaining FMLA leave, or to even discuss the nature of his illness.

Furthermore, the record does not contain a medical excuse for the plaintiff's September 6, 2003 absence; a medical certification form from Jennings' treating physician; or any other documentation that could have potentially provided the defendant with sufficient notice that the September absences for which Jennings was ultimately terminated were attributable to an FMLA-qualifying condition. The plaintiff also did not submit any medical records reflecting any treatment during these dates or provide any medical excuse to the plaintiff's employer that would give it notice that Jennings' absences in September 2003 were potentially attributable to an FMLA-qualifying reason.

In the absence of such notice, the court finds that a jury could not reasonably conclude that Jennings provided Avondale with sufficient notice to substantiate a claim for interference

of rights protected by the FMLA pursuant to 29 U.S.C. § 2615(a)(1).  Accordingly, the

defendant's motion for summary judgment is due to be GRANTED in its entirety and the

case dismissed with prejudice.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 4th day of August, 2005.

KARON OWEN BOWDRE

UNITED STATES DISTRICT JUDGE

11